IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**KATHLEEN LOPEZ,**

        **Plaintiff,**

v.                                                        CIV. 04-1033 LAM

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

        **Defendant.**

# MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's *Motion to Reverse and Remand for a Rehearing* (*Doc. 13*). In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to having the undersigned United States Magistrate Judge conduct all proceedings and enter final judgment in this case. The Court has reviewed Plaintiff's motion and her memorandum in support of the motion (*Doc. 14*), Defendant's response to the motion (*Doc. 17*) and relevant law.[1] Additionally, the Court has meticulously reviewed and considered the entire administrative record (hereinafter "*Record*" or "*R.*"). For the reasons set forth below, the Court **FINDS** that the decision of the Commissioner of Social Security (hereinafter, "Commissioner") should be **AFFIRMED** and Plaintiff's motion **DENIED**.

## I. Procedural History

On May 16, 2002, Plaintiff, Kathleen Lopez, applied for supplemental security income benefits. (*R. at 54-56.*) In connection with her application, she alleged a disability since

---

[1]Plaintiff did not file a reply to Defendant's response to the motion.

September 13, 1996. (*R. at 55.*) Plaintiff alleged a disability due to lower back pain, an abdominal hernia, abdominal surgery, leg problems, fluid drainage from her navel, vision problems, hot and cold flashes and numbness in her hands. (*R. at 63, 93.*) There is also evidence in the *Record* that Plaintiff suffers from, or complains of, pain and swelling in her feet and legs, numbness in her feet, chronic abdominal pain, depression, adjustment disorder, personality disorder, pain throughout her body, obesity, carpal tunnel syndrome, migraines, forgetfulness and knee pain. (*R. at 63, 81, 107, 147, 161-162, 185-187, 225-235.*) Plaintiff's application was denied at the initial and reconsideration levels. (*R. at 26, 27.*)

An administrative law judge (hereinafter "ALJ") conducted a hearing on October 3, 2003. (*R. at 215-239.*) Plaintiff was present and testified at the hearing. (*R. at 215, 224-238.*) Plaintiff was represented by counsel at the hearing. (*R. at 217.*) On March 19, 2004, the ALJ issued his decision in which he found that Plaintiff was not disabled at step five of the five-step sequential evaluation process set forth in *20 C.F.R. § 416.920.* (*R. at 13-19.*) The ALJ made the following findings, *inter alia*, with regard to Plaintiff: (1) she has not engaged in substantial gainful activity since the alleged onset of disability; (2) she has an impairment or combination of impairments considered "severe" based on the requirements in *20 C.F.R. § 416.920(b)*;[2] (3) her medically determinable impairments do not meet or medically equal one of the listed impairments in *20 C.F.R. Part 404, Subpart P,*

---

[2]The ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the cervical and lumbar spine, and situational depression. (*R. at 14.*) Under relevant Social Security regulations, an impairment or combination of impairments is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. *See 20 C.F.R. § 416.920(c)*. Presumably, the ALJ intended to refer to this regulation in his finding instead of *20 C.F.R. § 416.920(b)* which concerns the different subject of "substantial gainful activity." The ALJ found that Plaintiff's vision problems, possible carpal tunnel syndrome and umbilical hernia were not severe impairments. (*R. at 15.*)

*Appendix 1*; (4) her allegations regarding her limitations are not totally credible for the reasons set forth in the decision; (5) she has the residual functional capacity (hereinafter "RFC") to perform a full range of light level work;[3] (6) she is unable to perform any of her past relevant work; (7) she is "a younger individual between the ages of 45 and 49," as defined in *20 C.F.R. § 416.963*; (8) she has a "limited education," as defined in *20 C.F.R. § 416.964*; (9) she has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case; (10) she has the RFC to perform substantially all of the full range of light work; (11) based on an exertional capacity for light work, and her age, education and work experience, *Medical-Vocational Rule 202.17* in *20 C.F.R. Part 404, Subpart P, Appendix 2*, would direct a conclusion of "not disabled," and, additionally, even with changes in position, this does not significantly reduce the category of light jobs which she is able to perform; and (12) she was not under a "disability," as defined in the Social Security Act, at any time through the date of the ALJ's decision. (*R. at 18-19.*)

After the ALJ issued his decision, Plaintiff filed a request for review. (*R. at 8-9.*) On July 23, 2004, the Appeals Council issued its decision denying her request for review, making the decision of the ALJ the final decision of the Commissioner. (*R. at 4-7.*) On September 13, 2004, Plaintiff filed her complaint in this action. *See **Complaint*** (*Doc. 1.*)

---

[3]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." *20 C.F.R. § 416.967(b).*

3

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards. *See Hamilton v. Sec'y. of Health & Human Services*, 961 F.2d 1495, 1497-1498 (10th Cir. 1992). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief.  *See, e.g., Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  This Court's assessment is based on a meticulous review of the entire record, where the Court can neither re-weigh the evidence nor substitute its judgment for that of the agency.  *See Hamlin*, 365 F.3d at 1214; *see also Langley*, 373 F.3d at 1118.  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118 (*citation and quotation omitted*); *see also Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760.  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Langley*, 373 F.3d at 1118 (*citation and quotation omitted*); *see also Hamlin*, 365 F.3d at 1214.

A claimant has the burden of proving his or her disability,[4] which is defined for an individual eighteen years or older as being "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."

---

[4] *See Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993).

*42 U.S.C. § 1382c(a)(3)(A).* A five-step sequential evaluation process has been established for evaluating a disability claim. *See Bowen v. Yuckert*, 482 U.S. 137, 137 (1987). At the first four levels of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful employment; he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities; and either his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under *20 C.F.R. Part 404, Subpart P, Appendix 1*,[5] or he is unable to perform work that he has done in the past. *See Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988). At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other substantial gainful activity considering his RFC, age, education and work experience. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

## III.  Plaintiff's Age, Education, Work Experience and Medical History

Plaintiff was forty-six years old on the date of the second hearing. (*R. at 55, 217.*) She completed the ninth grade. (*R. at 69, 237-238*). She has past relevant work experience as a cafeteria line server and a motel maid. (*R. at 72.*) Plaintiff's medical records document a brief series of visits to a chiropractor for a work-related injury and several consultative examinations by medical and psychological consultants. Plaintiff's medical records are discussed in more detail below.

---

[5]If a claimant can show that his impairment meets or equals a listed impairment, and also meets the duration requirement in *20 C.F.R. § 416.909* (requiring that an impairment have lasted or be expected to last for a continuous period of at least twelve months), he will be found disabled. *See 20 C.F.R. §§ 416.920(a)(4)(iii) and 416.920(d).*

## IV.  Discussion/Analysis

Plaintiff contends that the ALJ erred at steps two and five of the sequential analysis. Specifically, Plaintiff asserts that the ALJ erred in: (1) failing to find that Plaintiff had the additional severe impairments of vision problems, carpal tunnel syndrome, hernia and obesity; (2) finding that Plaintiff had the RFC to perform a full range of light work; (3) applying *Medical-Vocational Rule 202.17* to Plaintiff's case, given his finding that Plaintiff's depression was a severe impairment; and (4) finding that Plaintiff's allegations regarding her subjective complaints of pain were not totally credible.  Plaintiff asks the Court to reverse the decision of the Commissioner and remand this case for a rehearing.  *See Plaintiff's **Motion to Reverse and Remand for a Rehearing*** (*Doc. 13*). Defendant argues that the ALJ applied the correct legal standards and correctly determined that Plaintiff is not disabled based on substantial evidence.  *See **Defendant's Response to Plaintiff's Motion to Reverse and Remand*** (*Doc. 17*).

### A.  Additional Severe Impairments

Plaintiff contends that the ALJ erred at step two of the sequential evaluation process in failing to find that Plaintiff had the additional severe impairments of vision problems, carpal tunnel syndrome, hernia and obesity.  Defendant asserts that the ALJ properly concluded that Plaintiff did not have these severe impairments.  The Court finds that there is substantial evidence in the *Record* to support the ALJ's determination of Plaintiff's severe impairments and the ALJ did not commit legal error at step two.

At step two of the sequential evaluation process, a claimant has the burden of showing that he or she suffers from an impairment or a combination of impairments that is severe. *See 20 C.F.R. § 416.920(a)(4)(ii).*  To be severe, an impairment or combination of impairments must

"significantly limit [a claimant's] physical or mental ability to do basic work activities." *20 C.F.R. § 416.921(a)*. Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; capacities for seeing, hearing and speaking; understanding, carrying out and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. *See 20 C.F.R. § 416.921(b)*. The severity determination at step two is based solely on medical factors. *See Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). Although the Tenth Circuit has described the required showing at step two as "de minimis,"[6] the mere presence of a condition or ailment documented in the record is not sufficient to prove that a claimant is significantly limited in the ability to do basic work activities. *See Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997). A claimant "must make a threshold showing that his medically determinable impairment or combination of impairments significantly limits his ability to do basic work activities . . . ." *Williams v. Bowen*, 844 F.2d at 751.

Plaintiff argues that her vision problems, which she characterizes as "blurriness," significantly limit her ability to do basic work activities. Plaintiff testified at the hearing that she can see, but her vision is "blurry." (*R. at 231.*) Plaintiff fails to explain how her vision problems significantly limit her ability to do basic work activities and the medical evidence in the *Record* does not support her claim that she has a severe vision impairment. The *Record* shows that the ALJ considered Plaintiff's vision problems and concluded that with glasses her vision would not be significantly decreased. (*R. at 14-15.*) The medical evidence shows that Plaintiff's vision was 20/25 on the left and 20/20 on the right, without glasses, in September of 2001, when she was examined by consulting physician

---

[6]*See Williams v. Bowen*, 844 F.2d at 751.

7

Mario Trance, M.D. (*R. at 145.*) Her vision was 20/100 in both eyes, without glasses, in October of 2002, when she was examined by consulting physician P. Padmanabhan, M.D. (*R. at 188*). Dr. Trance's notes make no mention of vision problems, and Dr. Padmanabhan noted an impression of "[v]isual problems, probably due to refractory error." (*R. at 188.*) There is no indication in the *Record* that Plaintiff's vision problems are not correctable with glasses and Plaintiff does not dispute the ALJ's conclusion in that regard. Nor do Plaintiff's vision problems rise to the level of a listing impairment.[7] Moreover, as the ALJ noted in his decision, there is evidence in the *Record* indicating that Plaintiff's vision is adequate for her to read, work cross-word puzzles, watch television and, sometimes, to drive. (*R. at 17, 184.*) Based on a review of all of the evidence, the Court finds that the ALJ's conclusion that Plaintiff's vision problems were not a severe impairment is supported by substantial evidence and is not contrary to law.

Additionally, Plaintiff argues that the ALJ erred in failing to find that she suffers from the severe impairment of carpal tunnel syndrome. Plaintiff points to her testimony in the *Record* that her hands become numb and painful when she engages in daily activities like washing dishes, and to her testimony that the pain radiates up to her shoulders. (*R. at 225-227.*) She also points to the fact that she reported arm pain and numbness to her chiropractor and Dr. Trance (*R. at 129, 130, 134, 139-142, 144*), and to findings by Dr. Trance of a positive Phalen's sign[8] over both wrists and a positive

---

[7]To qualify for the listing impairment of "impairment of visual acuity," the remaining vision in a claimant's better eye, after the best correction, must be 20/200 or less. *See 20 C.F.R. Part 404, Subpart P, Appendix 1, § 2.02.* According to the medical evidence in the *Record*, Plaintiff's vision does not meet this requirement.

[8]Testing for "Phalen's sign" involves bending the wrist forward for sixty seconds to see if it results in numbness, tingling or weakness. *Medline Plus, a service of the U.S. National Library of Medicine and the National Institutes of Health* (*http://www.nlm.nih.gov*).

Tinel's sign[9] over the left upper extremity (*R. at 147*), which she argues are indicators of carpal tunnel syndrome.[10]  The ALJ determined that Plaintiff's carpal tunnel syndrome was not a severe impairment.  (*R. at 15.*)  In doing so, he noted the positive Phalen's and Tinel's signs as possible indicators of carpal tunnel syndrome, but he also noted that Plaintiff had not undergone electromyogram or nerve conduction studies to confirm this condition.  (*R. at 15.*)  He also noted that the coordination and grip strength in Plaintiff's hands were found to be normal in the more recent physical examination performed by Dr. Padmanabhan (*R. at 15, 188-189*).  Additionally, the Court notes that Dr. Padmanabhan found no evidence of any weakness or numbness in his neurological examination of Plaintiff, and found her neurological condition to be normal.  (*R. at 187-188.*)  Dr. Padmanabhan also found that Plaintiff was "able to grasp, write, pinch and make a fist."  (*R. at 188.*)  Although there is conflicting medical evidence in the *Record* on the subject of whether Plaintiff suffers from carpal tunnel syndrome and, if so, to what degree, the Court finds that there is substantial medical evidence to support the ALJ's finding that Plaintiff does not suffer from carpal tunnel syndrome which rises to the level of a severe impairment and the ALJ did not err in this finding.  Conflicting medical evidence is not uncommon and the ALJ has a duty to resolve conflicts in the medical evidence.  *See Casias v. Sec'y. of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

---

[9]"Tinel sign" is "a sensation of tingling, or of 'pins and needles,' felt at [a] lesion site or more distally along the course of a nerve when the latter is percussed," which "indicates a partial lesion or early regeneration in the nerve."  Thomas Lathrop Stedman, *Stedman's Medical Dictionary* 2001 (27th ed., Lippincott Williams & Wilkins 2000) at 1640.

[10]Dr. Trance diagnosed Plaintiff with carpal tunnel syndrome.  (*R. at 147.*)  He recommended a splint and stated, without specifying what they would be, that he expected Plaintiff would have limitations on the handling of objects and fine manipulations with hands and fingers due to carpal tunnel syndrome.  (*R. at 148.*)

Plaintiff contends that she suffers from an umbilical hernia which is a severe impairment. She argues, without citations to the *Record*, that the hernia affects her ability to walk and sit, thus limiting her physical ability to do basic work activities. While it appears undisputed that Plaintiff suffers from a hernia, there is no medical evidence in the *Record* that the hernia significantly limits her ability to do basic work activities. Plaintiff testified at the administrative hearing that she suffers from the hernia which, she said, "hurts me a little bit," because she has a drainage tube in her navel. (*R. at 231-232.*) Dr. Trance noted umbilical scarring in his examination report of Plaintiff, but he did not note any restrictions as the result of an umbilical hernia. (*R. at 146-148.*) Dr. Padmanabhan noted the presence of an umbilical hernia in his examination report and the fact that it was "slightly tender" upon examination (*R. at 187*), but he only restricted Plaintiff from doing heavy, manual work, and he appears to have done so primarily because of her back condition, with the hernia being a minor factor in his determination. (*R. at 188.*) Thus, the Court finds that the *Record* contains substantial evidence to support the ALJ's conclusion that Plaintiff's hernia was not a severe impairment and this conclusion was not contrary to law.

Plaintiff also argues that she suffers from obesity which is a severe impairment, although she failed to allege this in connection with her application for benefits and the ALJ made no findings in this regard. (*R. at 63, 93.*) In support of her argument, Plaintiff asserts, without specifying how, that her obesity affects her ability to walk and sit, both of which are basic work activities.[11] However, Plaintiff points to no medical evidence in the *Record* supporting this assertion and the Court has

---

[11]*See 20 C.F.R. § 416.921(b)(1).*

found none.[12] Although one of the consulting physicians who examined Plaintiff noted that she is "quite obese" (*R. at 187*), neither the medical consultants who examined Plaintiff nor the state agency physicians who reviewed her case identified obesity as an impairment that would significantly limit her ability to do basic work activities. Thus, the Court does not find that it was error for the ALJ to fail to conclude that Plaintiff suffered from the severe impairment of obesity.

### B.  Assessment of RFC

Plaintiff contends that the ALJ improperly found that Plaintiff had the RFC to perform a full range of light work given her physical impairments. More specifically, Plaintiff contends that there is not substantial evidence in the *Record* to support this finding. The ALJ evaluated Plaintiff's residual functional capacity and found that she had the RFC to perform "a full range of light level work." (*R. at 19.*) As explained above, light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and, "[e]ven though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *20 C.F.R. § 416.967(b)*. To be considered capable of performing a full range of light work, a claimant "must have the ability to do substantially all of these activities." *Id.* The full range of light work also requires standing or walking, off and on, for a total of approximately six hours in an eight hour day, with intermittent sitting during the remaining time.[13] The lifting requirement for light work

---

[12]Plaintiff appears to argue that obesity causes her left knee to lock up, her feet to swell so that she has to wear sandals, and her tailbone to hurt when she sits for too long. *See Plaintiff's Memorandum in Support of Motion to Reverse and Remand for a Rehearing* (*Doc. 14*) at 4. However, there is no medical evidence in the *Record* connecting any of these complaints to obesity.

[13]*See Social Security Ruling 83-10, 1983 WL 31251 (S. S. A.) at \*6.*

can be accomplished with occasional stooping, and many unskilled, light jobs "do not require use of the fingers for fine activities to the extent required in much sedentary work."[14]  Having reviewed the *Record*, the Court finds that substantial, objective medical evidence supports the ALJ's determination that Plaintiff can perform a full range of light work given her physical impairments.

The *Record* includes the following medical evidence.  In November of 2000, Plaintiff's chiropractor, Tom Martin, who treated Plaintiff for two months, stated that Plaintiff could not perform the heavy lifting and continual bending needed for her previous job as a cafeteria worker but that she could do some light work with no heavy lifting over twenty-five pounds.  (*R. at 124-125.*) In September of 2001, consulting physician Dr. Trance stated, without specifying the limitations he had in mind, that based on his examination he expected Plaintiff would have some limitations on postural changes, limitations on lifting and carrying due to her back problems, and limitations in overhead reaching due to a decreased range of motion of her right shoulder.  (*R. at 147-148.*)  He also stated his expectations that Plaintiff would have no limitations on prolonged standing or walking, and no limitations on prolonged sitting.  (*R. at 147.*)  As noted above, Dr. Trance also stated that he expected Plaintiff would have unspecified limitations "on handling of objects and fine manipulations with the hands and fingers," due to carpal tunnel syndrome, which conflicted with Dr. Padmanabhan's findings based on his subsequent examination.  (*R. at 148.*)

In October of 2002, Dr. Padmanabhan examined Plaintiff and noted that she was able to stand and walk normally, although she was unable to squat and unable to bend beyond fifty degrees. (*R. at 188.*)  Contrary to Dr. Trance's report, he found that Plaintiff had a full range of motion in both shoulders and noted no limitations in overhead reaching.  (*R. at 189.*)  He also noted that she was able

---

[14]*Id.*

12

to "grasp, write, pinch, and make a fist," and that she displayed normal grip strength. (*R. at 189.*) He noted no limitations associated with her hands or fingers. (*R. at 186-190.*) He stated that due to her back problems, umbilical hernia and arthritis, Plaintiff "cannot do any heavy, manual work" and "may have to do mostly desk type of work." (*R. at 188.*) He noted that she did some housework at home and was able to walk around and clean the house, although she was not able to finish strenuous housework due to back and knee pain. *Id.*

The foregoing medical evidence does not indicate that Plaintiff is physically unable to perform light work. While Plaintiff correctly points out that the findings by Dr. Trance on the subject of Plaintiff's ability to reach and use her hands conflict with those of Dr. Padmanabhan, it is apparent that the ALJ considered all of the medical evidence in the *Record* and that his conclusions regarding Plaintiff's RFC are supported by substantial evidence and are not contrary to law.

Plaintiff also argues that the ALJ improperly relied on the opinions of non-examining state agency physicians in evaluating Plaintiff's RFC. The Court does not find this to have been in error. "State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." *20 C.F.R. § 416.927(f)(2)(i).* Their opinions must be considered by the ALJ. *Id.* Plaintiff also contends that the ALJ erroneously based his RFC assessment on the fact that no treating or examining physician found Plaintiff to be disabled; however, this argument has no merit. Although the ALJ noted the absence from the *Record* of any medical opinion that Plaintiff was disabled or unable to work (*R. at 17*), it is apparent from the ALJ's decision that he considered all of the medical evidence in the *Record* to establish Plaintiff's RFC. *See Record at 14-17.*

The Court concludes that the ALJ properly considered all of the medical evidence and that substantial medical evidence supports his assessment of Plaintiff's RFC.

### C.  Reliance on Medical-Vocational Guidelines

Plaintiff asserts that the ALJ erred in relying on the medical-vocational guidelines (hereinafter, the "Grids") to determine that Plaintiff was not disabled.  Plaintiff's argument is two-fold.  First, she argues that the presence of a nonexertional mental impairment which affects her ability to do basic work activities precluded reliance on the Grids as a matter of law.  Second, she argues that the ALJ improperly mis-characterized her mental impairment as situational depression which was contrary to the medical evidence in the *Record*.

As a general rule, the Grids may not be used conclusively to determine disability at step five of the sequential evaluation process if a claimant has a nonexertional impairment that limits his ability to do the full range of work within an RFC exertional category such as light work.  *See Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993).  Moreover, it is well established in this circuit that "resort to the grids is particularly inappropriate when evaluating nonexertional limitations such as pain and mental impairments."  *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991), *citing Channel v. Heckler*, 747 F.2d 577 at 580-581.  However, the mere presence of a nonexertional impairment, such as depression, does not automatically preclude reliance on the Grids.  *See Ray v. Bowen*, 865 F.2d 222, 225 (10th Cir. 1989).  The nonexertional impairment must interfere with the claimant's ability to work.  *See Ray v. Bowen*, 865 F.2d at 225-226; *see also Alderete v. Barnhart*, No. 03-2256, 114 Fed. Appx. 353 (10th Cir. Aug. 31, 2004) (unpublished) (reliance on Grids not precluded where nonexertional impairment does not affect claimant's ability to work).

In this case, the ALJ found, in essence, that Plaintiff's nonexertional impairment of depression would not affect her ability to work in a full range of jobs at the light exertional level.[15] Having reviewed the *Record*, the Court finds that there is substantial evidence to support this conclusion. Thus, the ALJ did not err in relying solely on the Grids to find that Plaintiff not disabled at step five. *See Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988) (presence of a nonexertional impairment does not preclude use of Grids if the nonexertional impairment does not further limit the range of jobs a claimant can do).[16]

The evidence in the *Record* supports the ALJ's conclusion that Plaintiff is able to perform a full range of light work despite her mental impairment. None of the physicians whose reports were before the ALJ concluded that Plaintiff was unable to perform light work due to her mental impairment. The Plaintiff's report of her activities of daily living and her testimony at the hearing do not contradict these assessments. (*R. at 102-105, 224-238.*)

---

[15] After a detailed discussion of the medical evidence in the *Record* regarding Plaintiff's mental impairment and her description of her daily activities, the ALJ concluded that "claimant retains a residual functional capacity which supports sustained work activity on a regular basis at the light level of exertion." (*R. at 17.*) In connection with his assessment of Plaintiff's RFC, he expressly noted that Plaintiff retained the RFC for a full range of light level work "despite her impairments." (*R. at 15.*)

[16] The Court acknowledges the seeming inconsistency between the ALJ's conclusion at step two that Plaintiff's depression was a severe impairment, meaning that it significantly limits her ability to do basic work activities, and his conclusion at step five that her depression did not affect her ability to do a full range of light work. However, as noted above, the mere presence of a nonexertional impairment does not automatically preclude reliance upon the Grids. The nonexertional impairment must limit a claimant's ability to perform the full range of jobs available to the claimant within the relevant exertional category. *See Channel v. Heckler*, 747 F.2d 577, 582-583 and n. 6 (10th Cir. 1984). Thus, a finding at step two that a claimant has a severe nonexertional impairment is not the same as a finding at step five that the nonexertional impairment affects residual functional capacity.

In his September, 2001, consultative examination report, Dr. Trance indicated a diagnosis of depression and noted complaints of poor sleep and crying spells; however, he also noted that Plaintiff had a normal appetite and was not taking any antidepressants although she might benefit from these. (*R. at 145, 147-148.*) In his October, 2001, consultative examination report, psychologist Will D. Parsons, Ph.D., diagnosed Plaintiff with "[a]djustment disorder with disturbance of emotion (depression)," and noted that Plaintiff denied suicidal thoughts or attempts, denied having any psychotherapy or mental health treatment other than attendance at some counseling sessions, had insight and judgment that appeared to be within normal limits, spoke coherently and in a well-organized fashion, was able to communicate relatively well orally, had a pretty good ability to relate, and had no overt psychopathology such as delusions or disturbances of perception or affect. (*R. at 160-161.*) Although Dr. Parsons noted that Plaintiff reported hearing whisperings in her head and a ringing in her ears, he attributed this to tinnitus. (*R. at 161.*) With regard to her vocational abilities, Dr. Parsons found that Plaintiff was able to understand and remember detailed and complex instructions and short and simple instructions, although her ability to carry out instructions would likely be impaired by her physical problems. (*R. at 161.*) He also found that Plaintiff's social interactions were likely to be relatively good, that she probably had a good ability to interact with other people, that her ability to adapt to changes in the workplace and be aware of normal hazards was relatively intact, and that she could use public transportation and travel to unfamiliar places. (*R. at 161.*) Dr. Parsons found that Plaintiff's mental impairment did not limit her ability to do any of the following activities: (1) understanding and remembering instructions; (2) social interactions; or (3) adaptation. (*R. at 177-178.*) Dr. Parsons found that Plaintiff was moderately limited in her ability

16

to do sustained concentration and task persistence, but that this was due to her physical problems. (*R. at 177-178.*)

In his October, 2002, consultative examination report, psychiatrist R. Preston Shaw, M.D., diagnosed Plaintiff with "Adjustment Disorder with Depressed Mood, chronic" (*R. at 185*), and noted that Plaintiff was not in treatment or on any kind of medication and she reported that her depression was calming down and while she used to cry for no reason she did not do that anymore. (*R. at 183-184.*) He noted that she dressed appropriately and was well-groomed; she was alert; her speech was normal; she was fully oriented and cooperative and pleasant; her psychomotor activity was normal; her memory was functional and she was fully oriented to time, place and person; her affect was normal; her thought processes were goal oriented and organized, no delusions were observed, no hallucinations were present; her mood was not hopeless or suicidal and she did not cry; and she was able to sustain focus and concentration on evaluation tasks for one hour. (*R. at 184-185.*) Dr. Shaw found that Plaintiff's mental impairment did not limit her ability to do any of the following activities: (1) understanding and remembering instructions; (2) sustained concentration and task persistence; (3) social interactions; and (4) adaptation. (*R. at 180-182.*)

The state agency medical experts who reviewed Plaintiff's file and completed a Psychiatric Review Technique form (hereinafter, PRTF) for Plaintiff, found no significant limitations as a result of her mental impairment. Dr. Scott Walker, M.D., in a PRTF dated November 27, 2001, determined that Plaintiff suffered from an adjustment disorder with depressed mood. (*R. at 166.*) He concluded that Plaintiff had no functional limitations as a result of her mental impairment on activities of daily living or maintaining social functioning, and that she had no repeated episodes of decompensation. (*R. at 173.*) He concluded that Plaintiff had only mild difficulties in maintaining concentration,

persistence or pace. *Id.* A state agency medical expert who completed a PRTF for Plaintiff dated January 10, 2003, concluded that Plaintiff suffered from an adjustment disorder with depressed mood and a dependent personality disorder. (*R. at 191, 194, 198.*) He found that Plaintiff had only mild limitations as a result of her mental impairment on activities of daily living, maintaining social functioning and maintaining concentration, persistence or pace, and no repeated episodes of decompensation. (*R. at 201.*)

With regard to Plaintiff's second argument related to the Grids, that the ALJ improperly mis-characterized her mental impairment as situational depression which was contrary to medical reports in the *Record* from Dr. Parsons and Dr. Shaw, the Court finds no grounds for reversal or remand. The *Record* contains different diagnoses of Plaintiff's mental impairment by three examining medical sources,[17] and the ALJ added his own characterization of her mental impairment as "situational depression." (*R. at 14*). However, depression is a common theme in all of the diagnoses and what is more significant is the fact that the medical evidence uniformly supports the ALJ's ultimate conclusion that Plaintiff's mental impairment did not limit her ability to perform a full range of light work. The ALJ may have imprecisely labeled Plaintiff's mental impairment, but this did not affect his assessment of the evidence in the *Record* regarding the limitations imposed by her mental impairment or his conclusion that she could perform a full range of light work despite her mental impairment.

### D. Assessment of Plaintiff's Credibility

---

[17] Psychologist Will D. Parsons diagnosed Plaintiff with adjustment disorder with disturbance of emotion (depression) and "[r]ule out personality disorder". (*R. at 161-162.*) Psychiatrist R. Preston Shaw diagnosed Plaintiff with adjustment disorder with depressed mood, chronic, and a dependent personality disorder. (*R. at 185.*) Dr. Trance diagnosed Plaintiff with depression. (*R. at 147.*)

Plaintiff argues that the ALJ erred in assessing Plaintiff's credibility regarding her subjective complaints of pain. The ALJ evaluated the evidence and concluded that Plaintiff's allegations regarding pain were not totally credible. (*R. at 15, 17, 19.*) "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned if supported by substantial evidence. *Diaz v. Sec'y. of Health and Human Services*, 898 F.2d 774, 777 (10th Cir. 1990). However, such deference is not absolute. *See Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993). "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988).

In this case, the ALJ closely and affirmatively linked his credibility findings to substantial evidence in the *Record* and discussed the evidence that he relied on in evaluating Plaintiff's credibility. In support of his credibility determination, the ALJ noted evidence in the *Record* that, despite her complaints of pain, Plaintiff took care of her grandchildren, did simple household chores, read to her grandchildren, worked cross-word puzzles, watched television with her grandchildren, took care of her personal needs, read the newspaper or books, listened to music, drove occasionally, visited with friends and family, went on picnics and took her grandchildren to the park. (*R. at 17, 160, 184.*) He also noted that Plaintiff took no medication for her pain and did not see a doctor on a regular basis. (*R. at 17.*) In determining the credibility of complaints about pain, an ALJ may consider factors such as the nature of daily activities, levels of medication and their effectiveness, the extensiveness of attempts to obtain relief and the frequency of medical contacts. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). If an ALJ sets forth the specific evidence that he relies on in evaluating a claimant's credibility, he does not have to recite the evidence factor-by-factor. *See White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2002).

The Court finds that the ALJ closely and affirmatively linked his credibility findings regarding Plaintiff's subjective complaints of pain to substantial evidence in the *Record*. The ALJ properly analyzed Plaintiff's testimony and other evidence in the *Record* and outlined the reasons for his evaluation of Plaintiff's credibility. The reasons given by the ALJ for his findings regarding Plaintiff's credibility comply with applicable law and are supported by substantial evidence in the *Record*.

## V.  Conclusion

In conclusion, the Court **FINDS** that the Commissioner's decision is supported by substantial evidence in the record as a whole and comports with relevant legal standards. Accordingly, the Court will **AFFIRM** the decision of the Commissioner and **DENY** Plaintiff's motion.

**WHEREFORE, IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED** and Plaintiff's *Motion to Reverse and Remand for a Rehearing* (*Doc. 13*) is **DENIED**.  A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

_Lourdes A. Martínez_
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**